26



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 1 3 2001

Michael N. Milby
Clerk of Court

JURY

| | | |
|---|---|---|
| **DARWIN BISHOP** | § | |
| *Plaintiff* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-00-138 |
| | § | |
| **UNION STANDARD INSURANCE** | § | |
| **COMPANY** | § | |
| *Defendant* | § | |

# DEFENDANT UNION STANDARD INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S OPPOSED MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES UNION STANDARD INSURANCE COMPANY ("UNION STANDARD") Defendant in the above entitled and styled cause of action, and files this its Response to Plaintiff's Opposed Motion for Summary Judgment, and in support thereof would show the Court as follows:

1. On or about March 12, 1997, a policy of insurance, issued by Defendant **UNION STANDARD** to Plaintiff **DARWIN BISHOP**, was in effect covering the dwelling and personal property located at 2419 Washington Street in Harlingen, Texas, as evidenced by a true and correct copy of the insurance policy attached hereto as Exhibit "A," and incorporated herein for all purposes.

2. On or about March 12, 1997, the Plaintiff **DARWIN BISHOP** reported a theft of personal property at his dwelling located at 2419 Washington Street in Harlingen, Texas, to the Harlingen

Police Department, as evidenced by a true and correct copy of the incident report attached hereto as Exhibit "B," and incorporated herein for all purposes.

3. According to the incident report and investigation of the Harlingen Police Department, Plaintiff reported a theft of personal property from the bed and cab, through an "unsecured driver door" of his pick-up truck, with a reported value of $3,340.00. *See* Exhibit "B."

4. On or about April 18, 1997, the Plaintiff reported the loss to his insurance agent, Connelly & Bartnesky, Ins., as evidenced by a true and correct copy of the Property Loss Notice attached hereto as Exhibit "C," and incorporated herein for all purposes. According to Exhibit "C," the probable amount of loss value was $3,300.00.

5. The insurance policy provides duties that *an insured **must** comply with after a loss is reported* as follows:

### Section I - Conditions

### 3. Duties after Loss

"(4) furnish a complete inventory of damaged personal property showing the quantity, description and amount of loss. Attach all bills, receipts and related documents which you have that justify the figures in the inventory.

(6) send to us, if we request, *your signed sworn proof of loss within 91 days* of our request on a standard form supplied by us. We must request a signed sworn proof of loss within 15 days after we receive your written notice, or we waive our right to require a proof of loss. Such waiver will not waive our other rights under this policy.

(a) This proof of loss shall state, to the best of your knowledge and belief:

(i) the time and cause of loss.
(ii) the interest of the insured and all others in the property involved including all liens on the property.
(iii) other insurance which may cover the loss.

  (iv) the actual cash value of each item of property and the amount of loss to each item.

 (b) If you elect to make claim under the Replacement Cost Coverage of this policy, this proof of loss shall also state, to the best of your knowledge and belief:

  (iii) the full cost of repair or replacement of loss without deduction for depreciation."

*See* Section 1- Conditions of Exhibit "A."

6. On or about June 17, 1997, the Defendant was in receipt of the Plaintiff's ninety-three (93) page inventory in reference to his theft loss, a true and correct copy of which is attached hereto as Exhibit "D," and incorporated herein for all purposes.

7. On July 1, 1997, a Reservation of Rights Letter was sent to the Plaintiff, a true and correct copy of which is attached hereto as Exhibit "E," and incorporated herein for all purposes.

8. On or about September 11, 1997, the Plaintiff submitted his sworn statement of proof of loss claiming that the actual cash value of the property allegedly stolen was $105,370.46, a true and correct copy of which is attached hereto as Exhibit "F," and incorporated herein for all purposes.

9. On September 16, 1997, the Defendant rejected Plaintiff's proof of loss and declined to make payment because of a dispute with the value of the alleged stolen property. The Plaintiff was requested to submit to an examination under oath with respect to his claim for loss and damage as a result of the alleged theft. He was also requested to produce all relevant documents in his possession pertaining to the loss by theft including bills, invoices, canceled checks or cash receipts evidencing both the original purchase and its replacement cost as a result of the theft; books and account; copies of tax returns for three years prior to the theft; the original policy of insurance;

and the last will and testament of his deceased father. A true and correct copy of said letter is attached hereto as Exhibit "G," and incorporated herein for all purposes.

10. On October 22, 1997 and again on November 26, 1997, the Plaintiff's Statement Under Oath was taken, true and correct copies of which are attached hereto as Exhibit "H" and "I" respectively, and incorporated herein for all purposes. On October 22, 1997, at his first examination under oath, the Plaintiff did not produce as requested any bills, invoices, canceled checks or cash receipts evidencing the value or replacement cost for the alleged items stolen. The examination under oath was continued until November 26, 1997, for the Plaintiff to produce such items. Once again, the requested information was not produced.

11. On January 26, 1998, the Defendant extended an offer of $10,000.00, as full and final settlement of the Plaintiff's claim. A true and correct copy of the letter extending said offer is attached hereto as Exhibit "J," and incorporated herein for all purposes. Plaintiff rejected said offer.

12. On August 8, 2000, almost three (3) years following the date of loss, Plaintiff filed his Original Petition.

13. On May 2, 2001, the preliminary expert report of Keitha Brooke, a Member of the International Society of Appraisers, was received by this Defendant. A true and correct copy of Ms. Brooke's preliminary report is attached hereto as Exhibit "K," and incorporated herein for all purposes. As the Court will note, even Ms. Brooke was unable to provide an appraisal of the property allegedly stolen.

14. On June 26, 2001, the Plaintiff responded to this Defendant's Written Interrogatories and Request for Production, a true and correct copy of said responses and exhibits are attached hereto

as Exhibit "L," and incorporated herein for all purposes. On July 25, 2001, the Plaintiff provided supplemental responses to Defendant's Requests For Production, a copy of which is attached hereto as Exhibit "M," and incorporated herein for all purposes, and on July 31, 2001, Plaintiff provided supplemental responses to Defendant's Written Interrogatories and Second supplemental Responses to Defendant's Requests for Production, a copy of which is attached hereto as Exhibit "N," and incorporated herein for all purposes.

15. To date, other than a few estimated appraisals received by this Defendant for the first time on June 26, 2001, four years following the date of loss, the Plaintiff has not provided this Defendant with all information necessary to justify the figures in his inventory pursuant to the terms of the insurance policy. *See* subpart 3. a. (4) of Section I entitled "Conditions" of Exhibit "A."

16. The Plaintiff has reported at least four other similar theft loss claims prior to the loss in question. *See* Plaintiff's response to Defendant's Written Interrogatory No. 6 contained in Exhibit "L," and his Statements Under Oath, Exhibits "H" and "I."

17. This Defendant denies that the Plaintiff is entitled to summary judgment as there are genuine issues of material fact in dispute. In particular, Defendant denies that the Plaintiff has complied with his duties under the terms of the insurance policy, and further denies that the Plaintiff has submitted all documents necessary to justify the value of the inventory in his proof of loss. Initially, the Plaintiff reported a loss of $3,300.00, but after some time, submits an inventory of alleged items stolen with a value of over $100,000.00, almost $50,000.00 more than the policy limits for personal property. Defendant denies that the property contained in the inventory was stolen as allegedly reported by the Plaintiff and further denies the value of the

inventory as submitted. Defendant would show that the Plaintiff is familiar with the processing of theft claims, is comparatively at fault in allowing his unsecured vehicle open to the public, is comparatively at fault for failing to mitigate his damages and comparatively at fault for his breach of the contract of insurance by failing to submit the necessary documents to establish proof of the value of the inventory reportedly stolen.

18.  As such, Plaintiff's Opposed Motion for Summary Judgment should be denied.

WHEREFORE PREMISES CONSIDERED, Defendant UNION STANDARD prays that, upon consideration of their response, discovery, supporting documents and evidence, the Court deny the Plaintiff's Opposed Motion for Summary Judgment.

Respectfully Submitted,

**GRIFFITH, SAENZ & HILL, L.L.P.**
1325 Palm Blvd., Suite H
Brownsville, Texas 78520
(956) 541-2862 Telephone
(956) 541-2864 Facsimile


BY: _____
CARLA M. SAENZ
State Bar No. 17514595
Federal ID No. 7994
**ATTORNEYS FOR DEFENDANT,**
**UNION STANDARD INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

**I CERTIFY** that a true and correct copy of the above and foregoing document has been sent on this 13th day of August, 2001, to all counsel of record, to wit:

Mr. R. W. Armstrong  
**R.W. Armstrong & Associates**  
2600 Old Alice Road, Suite A  
Brownsville, Texas 78521

CMRRR70000520 0024 6464 3005

*Attorney for Plaintiffs*

_____  
CARLA M. SAENZ