46

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 0 9 2002

Michael N. Milby
Clerk of Court

|  |  |  |
|---|---|---|
| | **JURY** | |
| **DARWIN BISHOP** | § | |
| *Plaintiff* | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. B-00-138** |
| | § | |
| **UNION STANDARD INSURANCE** | § | |
| **COMPANY** | § | |
| *Defendant* | § | |

---

**DEFENDANT UNION STANDARD INSURANCE COMPANY'S MOTION TO
EXCLUDE EXPERT TESTIMONY OF GUY BEVIL**

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Union Standard Insurance Company, Defendant in the above-styled and

numbered case and files this its Motion to Exclude Expert Testimony of Guy Bevil and would show

the Court as follows:

**I.**
**FACTS**

Plaintiff in this case, **DARWIN BISHOP** filed suit against Defendant for breach of contract.

Plaintiff's claim arises out of an alleged theft of personal property at Plaintiff's dwelling located at

2419 Washington Street in Harlingen, Texas, on or about March 12, 1997. Plaintiff alleges that

Defendant breached the insurance policy insuring his personal property when Defendant determined

not to pay the full amount of the policy coverage for Plaintiff's claimed loss.

In that connection, according to the incident report and investigation of the Harlingen

Police Department, Plaintiff reported a theft of personal property from the bed and cab, through

1

an "unsecured driver door" of his pick-up truck, which Plaintiff first reported to have a value of $3,340.00. However, on or about June 17, 1997, the Defendant received a ninety-three (93) page inventory of items Plaintiff claimed as his theft loss. In addition, on or about September 11, 1997, the Plaintiff submitted his sworn statement of proof of loss claiming that the actual cash value of the property allegedly stolen was $105,370.46. On September 16, 1997, the Defendant rejected Plaintiff's proof of loss and declined to make payment because of a dispute with the value of the alleged stolen property. Further, the Defendant requested that Plaintiff produce all relevant documents in his possession pertaining to the loss by theft including bills, invoices, canceled checks or cash receipts evidencing both the original purchase and its replacement cost as a result of the theft. The requested information was not produced.

Instead, Plaintiff retained Guy Bevil to analyze the Plaintiff's ninety-three (93) page inventory and who provided a report with regard to the value and authenticity of the alleged collectible, and/or antique pens and fountain pens Plaintiff claimed as part of his loss.

Defendant argues in this motion that the testimony of Guy Bevil should not be allowed at the trial in this case due to following reasons:

1.    Guy Bevil's opinion is not reliable and not based on a reliable foundation under Federal Rule of Evidence 702;

2.    Guy Bevil's opinion should not be admitted under Federal Rule of Evidence 403.

## II.

In determining whether or not the witness qualifies as an expert, it is the role of the trial court to make the preliminary determination of whether the proffered testimony meets the standards set forth for experts under Federal Rule of Evidence 702. See, *Daubert vs. Merrell Dow*

*Pharmaceutical, Inc.*, 509 U.S. 579, 113 S.CT. 2786 (1993). In determining the qualification of a witness as an expert it is within the trial court's discretion. *Kumbo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167 (1999).

### III.
### The Expert Opinion of Guy Bevil is Unreliable And not based upon a Reliable Foundation.

Defendant asserts that the testimony of Guy Bevil is not reliable as required by law in that the  underlying foundational data used by Mr. Bevil is unreliable.

The United States Supreme Court has held that Federal Rule of Evidence 702 requires a proponent of scientific expert testimony to demonstrate that such evidence is relevant and reliable before it can be admitted.  In *Daubert,* the Court adopted the following factors for a trial court to consider in determining admissibility under Rule 702:

1. The extent to which the theory has been or can be tested;

2. The extent to which the technique relies upon the subjective interpretation of the expert;

3. Whether the theory has been subjected to peer review and/or publication;

4. The technique's potential rate of error;

5. Whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and

6. The non-judicial uses which have been made of the theory or technique. *Robinson,* 923 S. W.2d at 557.

Further, before allowing an expert to testify, the trial court must make the initial determination whether the expert's opinion is relevant and whether the method and research upon which it is based are reliable. *Daubert vs. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 592-93, 113

S.CT. 2796 (1993). Unreliable evidence is of no assistance to the trier of fact and is therefore inadmissible. ID.

In the present case there is no evidence that Mr. Bevil's testimony is reliable as is currently required under the state of the law. Mr. Bevil testifies that he did not ever physically see or examine the fountain pens and pens Plaintiff claims as a loss. Mr. Bevil admits that he rendered his opinion as to valuation based upon no more than a list of pens which was provided to him by Plaintiff. (Bevil Depo., Pg. 13, Ll. 7-15, attached hereto as "Exhibit A"). Therefore, Mr. Bevil had no opportunity to examine the condition of the pens, whether they were operable or useable, or what materials the pens were made of. In other words, Mr. Bevil made no consideration of any data or underlying facts concerning the items he valuate. Obviously such a technique for the valuation of property relies wholly upon the subjective interpretation of Mr. Bevil. In addition, such a technique would undoubtedly result in great potential for error. Further, it is unlikely that such a technique could be tested or that it would be generally accepted as valid by the community of antique appraisers of pens or any property for that matter. In sum, Mr. Bevil's opinion testimony is not relevant and is wholly unreliable.

In that further connection, Mr. Bevil testified that he has never been called upon or otherwise retained to render a professional as to the valuation of property which was either stolen or lost. (Exhibit A, Pg. 14, Ll., 7-13; Pg. 15, Ll., 2-6) More significantly, Mr. Bevil testified that he has rendered an opinion, on two or three occasions, as to the valuation of property which he never examined but that those opinions would be purely speculation. (Exhibit A, Pg., 18, Ll., 14- Pg. 19, Ll., 7) Clearly, Mr. Bevil's opinion testimony, by his own admission is unreliable and irrelevant. Accordingly, this Court should exclude the testimony of Mr. Bevil from the trial in this cause.

V.

In addition, Federal Rule of Evidence 403 provides that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by consideration of undue delay, or needless presentation of cumulative evidence. In the present case, the opinion testimony of Mr. Bevil is wholly unreliable and not based upon any facts or data.    Accordingly, any probative value of such testimony is substantially outweighed by the danger of unfair prejudice to Defendant, would confuse the issues and would mislead the jury. Therefore, this Court should exclude the opinion testimony of Guy Bevil from the trial of this cause.

WHEREFORE, PREMISES CONSIDERED, Defendant's respectfully request that the Court, following an evidentiary hearing on the matter, Order:

1.    That the testimony of Guy Bevil is inadmissible for any purpose in this litigation;

2.    That counsel and all other witnesses for Plaintiff refrain from any mention of or reference to the thoughts, findings, or opinions of Guy Bevil during all stages of litigation when the prospective or trial jurors are present;

3.    That Defendant has such other and further relief, general or special, to which Defendant may show themselves to be justly entitled.

Respectfully submitted,

**CARLA M. SAENZ & ASSOCIATES, P.L.L.C.**
1325 Palm Blvd., Suite H
Brownsville, Texas 78520
(956) 541-2862 Telephone
(956) 541-2864 Facsimile

BY: _____
       CARLA M. SAENZ
       State Bar No. 17514595
       Federal ID No. 7994
       **ATTORNEYS FOR DEFENDANT,**
       **UNION STANDARD INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

**I CERTIFY** that a true and correct copy of the above and foregoing document has been sent

on this __5th__ day of April, 2002, to all counsel of record, to wit:

Mr. R. W. Armstrong                     **VIA CMRRR 7000 1530 0005 5014 9275**
**R.W. Armstrong & Associates**
2600 Old Alice Road, Suite A
Brownsville, Texas 78521

*Attorney for Plaintiffs*

CARLA M. SAENZ

Defendant's Motion to Exclude Expert

Testimony of Guy Bevil

**EXHIBIT "A"**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DARWIN BISHOP              ) (
     Plaintiff          ) (
                     ) (
VS.                        ) (    CIVIL ACTION NO. B-00-138
                     ) (
UNION STANDARD INSURANCE   ) (
COMPANY                    ) (
     Defendant          ) (

---

ORAL DEPOSITION OF
GUY BEVIL
MARCH 22, 2002



---

     ORAL DEPOSITION OF GUY BEVIL, produced as a

witness at the instance of the DEFENDANT, taken in the

above styled and numbered cause on MARCH 22, 2002,

reported by PEGGY BRYANT, Certified Court Reporter

No. 5725, in and for the State of Texas, at the offices

of R. W. Armstrong, 2600 Old Alice Road, Brownsville,

Texas, pursuant to the Federal Rules of Civil Procedure.

APR - 1 2002

---

BRYANT & STINGLEY, INC.
McALLEN          HARLINGEN          BROWNSVILLE
(956)618-2366    (956)428-0755      (956)542-1020

13

1  of property that belongs to an estate, are those

2  occasions where furniture and objects are physically

3  present for you to evaluate?

4      A.  Uh-huh.

5      Q.  Is that correct?

6      A.  Yes.

7      Q.  And in this particular case, you weren't given

8  the opportunity to evaluate physical objects,

9  obviously?

10     A.  Right.

11     Q.  In other words, you simply took what was listed

12  on the -- Mr. Bishop's proof of loss or list of claim

13  and from that list of claim, you rendered an opinion

14  solely on fountain pens; is that correct?

15     A.  Yes.

16     Q.  You are not here to give an opinion whether or

17  not the items were stolen or not; is that correct?

18     A.  No, I have no information or involvement in

19  that part of it.

20     Q.  Mr. Bevil, in how many cases have you rendered

21  an opinion in a theft case?

22     A.  I don't think it's ever come up.

23     Q.  So am I safe to conclude that this is the very

24  first time that you have been asked to render an

25  opinion on providing a value or an appraisal on

14:24:44 1 property that has allegedly been stolen?

14:24:50 2     A.  I guess that would be true, but the point I

14:24:55 3 keep trying to come back to is this is stuff I deal

14:24:58 4 with every day.

14:24:59 5     Q.  I understand that.

14:25:01 6     A.  Or I'm broke if I don't make sales.

14:25:05 7     Q.  You need to tell me, then, Mr. Bevil, how many

14:25:09 8 times have you been asked, either by a lawyer or by a

14:25:11 9 bank, by an insurance company, to give or render an

14:25:15 10 opinion on items that have been allegedly stolen?

14:25:21 11     A.  Don't have any.

14:25:22 12     Q.  So none?

14:25:23 13     A.  None.

14:25:25 14     Q.  How many times have you been asked to render an

14:25:28 15 opinion for an insurance company for evaluating or

14:25:31 16 appraising property?

14:25:40 17     A.  For insurance purposes?

14:25:43 18     Q.  For insurance purposes, either -- by an

14:25:47 19 insurance company that has contacted you to give an

14:25:50 20 appraisal on property.  How many times?

14:26:05 21     A.  I don't think there have been any -- any of

14:26:07 22 those that were limited to insurance.  Insurance is

14:26:14 23 usually in the bank, but it's being handled by the

14:26:17 24 trust officer at the bank, and they say, "We want you

14:26:24 25 to do this and we want you to do that," very much like

BRYANT & STINGLEY, INC.
McALLEN      HARLINGEN     BROWNSVILLE
(956)618-2366  (956)428-0755  (956)542-1020

what we are doing this afternoon.

Q.   Okay.  Now, as far as cases or situations where you have been asked to give a value or an appraisal on items that have been reported lost, have you been retained in any situation such as that?

A.   No.

Q.   Is this the first time that you have given a deposition in your experience, in your professional experience?

A.   Not -- let me see.  Rephrase that.

Q.   How many times have you given a deposition in your professional experience?

A.   Maybe three or four times.  Not over ten because, again, we kind of divide it up in this part of the -- part of the world.

Q.   Okay.  And so you have given a deposition three or four times in South Texas regarding your evaluation or value of -- given to a particular property; is that correct?

A.   Right.

Q.   And in those occasions, what were the properties that you were evaluating?

A.   Some of them, it's a little of everything.  Others, it has been fountain pens and mechanical pencils.

14:31:51  1    A.   Uh-huh.

14:31:52  2    Q.   -- and the date that this property originated,

14:31:55  3  correct?

14:31:57  4    A.   The last two things are a little tough because

14:31:59  5  mostly we are dealing with deceaseds and the bank trust

14:32:06  6  officers who are disposing of the corpus of the estate.

14:32:11  7    Q.   Let me ask you this, Mr. Bevil:  How many times

14:32:15  8  have you given an appraisal or an opinion where you

14:32:20  9  have not actually seen the property that you are

14:32:23 10  evaluating?

14:32:25 11    A.   That would be rare.

14:32:27 12    Q.   Okay.  Tell --

14:32:29 13    A.   Just depends on the circumstances.

14:32:30 14    Q.   How many times have you given an opinion where

14:32:34 15  you never saw the property that you were evaluating?

14:32:40 16    A.   Probably never -- I'll say no.

14:32:42 17    Q.   So this is the very first time that you have

14:32:44 18  been asked to render an opinion on property that you

14:32:49 19  have never inspected or seen, correct?

14:32:53 20    A.   Yes, yes.

14:32:55 21    Q.   Okay.

14:32:57 22    A.   But, again, we work as friends, it -- it

14:33:02 23  usually comes out a little differently.  I'm not being

14:33:07 24  argumentative.

14:33:08 25    Q.   Okay.  Well, let me rephrase the question one